IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

CITY AND COUNTY OF HONOLULU,      )      CIV. NO. 08-00404 SOM
                                  )
          Plaintiff,              )
                                  )      ORDER DENYING PLAINTIFF'S
     vs.                          )      MOTION FOR PRELIMINARY
                                  )      INJUNCTIVE RELIEF
U.S. ENVIRONMENTAL PROTECTION     )
AGENCY, STEPHEN L. JOHNSON,       )
as Administrator of the          )
United States Environmental       )
Protection Agency, and WAYNE      )
NASTRI, as Regional               )
Administrator of the United       )
States Environmental              )
Protection Agency,                )
                                  )
          Defendants.             )
_____    )

ORDER DENYING PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTIVE RELIEF

I.        INTRODUCTION.

          This motion for a preliminary injunction arises in the

context of a request for documents pursuant to the Freedom of

Information Act, 5 U.S.C. § 552 ("FOIA").  Plaintiff City and

County of Honolulu ("the City") sues for the production of

documents that Defendants Environmental Protection Agency and its

Administrators ("the EPA") allegedly relied on in denying the

City's requests for waivers of requirements for secondary

treatment of wastewater under section 301(h) of the Clean Water

Act.  The City now asks this court to enjoin an ongoing

administrative appeal until its FOIA requests have been resolved.

The motion is hereby DENIED.  While the City identifies
as irreparable harm the denial of informed public participation
in the administrative appeal, the City does not indicate how the
public might participate in the administrative appeal at all.
With respect to any adverse environmental impact or monetary
expense that might result from waiver denials, these harms would
flow from the substance of an administrative decision, not from
any administrative process.  A challenge to the substance of an
EPA determination is properly addressed to the Ninth Circuit, not
the district court.  Given these circumstances, the court
declines to enjoin agency proceedings.

II.      BACKGROUND FACTS.

Under the Clean Water Act, a wastewater treatment plant
is required to meet certain secondary treatment standards before
discharging wastewater, unless it obtains a waiver under section
301(h) of the Clean Water Act.  33 U.S.C. § 1311(b)(1)(B).
Meeting the secondary treatment standards at the Honouliuli and
Sand Island treatment plants would cost, according to the City,
upwards of $1.2 billion.  The City currently has waivers for both
plants.

This court finds the following facts, which are
undisputed:

The City submitted applications for renewal of the
Honouliuli and Sand Island plants' section 301(h) waivers on

2

December 1, 1995, and May 5, 2003, respectively.  In 2007, the
EPA issued tentative decisions to deny the continuation of the
waivers.  The City submitted FOIA requests to obtain documents
for use in appealing the EPA's decisions.  The EPA produced some
documents but withheld approximately 200 others.

Alleging that the EPA was improperly withholding
documents central to its decisions to deny the section 301(h)
waivers, the City brought suit in this court on September 8,
2008, seeking an order requiring the EPA to produce documents
under FOIA.  On January 5, 2009, the EPA issued final decisions
denying the City's requests for section 301(h) waivers.  At the
time the present motion was filed, the City had an appeal
deadline of March 11, 2009.

The City now asks this court to preliminarily enjoin
the administrative appeal process pending the conclusion of this
FOIA suit.  The City alleges that the public will be irreparably
harmed if an administrative appeal is permitted to proceed
without the production of the requested documents.  It notes
that, despite the possibility of appellate review on the merits,
an important agency decision, with serious environmental and
budgetary consequences, may be made without the benefit of public
participation.

III.     JURISDICTION.

This court begins by examining whether it even has jurisdiction to issue the requested injunction.  This turns out to be a difficult issue, one without controlling law directly on point.  This court concludes that it does indeed have jurisdiction.

Pursuant to FOIA, this court "has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant."  5 U.S.C. § 552(A)(4)(B).  On the present motion, the City seeks relief beyond the production of records; it asks the court to enjoin the agency proceedings before the court determines whether records must be produced.  Whether this court may enjoin EPA proceedings pursuant to FOIA presents a different issue from this court's clear statutory authority to order the production of documents pursuant to FOIA.

The Supreme Court notes that § 552(a) vests in district courts equitable jurisdiction to order remedies related to, but not limited to, the production of records of federal agencies.  Renegotiation Bd. v. Bannercraft Clothing Co., 415 U.S. 1, 19 (1974).  However, the Court has expressly declined to determine "whether, or under what circumstances, it would be proper for the District Court to exercise jurisdiction to enjoin agency action pending the resolution of an asserted FOIA claim."  Id.

4

Instead of expressly extending equitable jurisdiction pursuant to FOIA over all federal agencies, the Supreme Court has conditioned a district court's jurisdiction to stay an agency proceeding pursuant to FOIA on the nature of the agency in question. In Bannercraft, the agency in question was the Renegotiation Board, a federal agency created to eliminate excessive profits from wartime contracts with the United States. Renegotiation proceedings were held at the Tax Court and then, after 1971, before the Board itself. Through a system of informal bargaining, the agency and the contractor in question were directed to attempt to reach an agreement to restructure their contract. If no agreement was reached, the Board would issue a ruling. A contractor dissatisfied with the ruling could appeal to the Court of Claims, which reviewed the matter de novo.

The Court held in Bannercraft that "the design of the Renegotiation Act was to have renegotiation proceed expeditiously without interruption for judicial review, and that the Board's proceedings were not to be enjoined prior to the exhaustion of the administrative process." 415 U.S. at 21. The Court emphasized the informal nature of the proceedings, and the possibility of judicial review. It cited to its previous opinion regarding judicial review of proceedings under the Renegotiation Act. That earlier decision, which did not involve FOIA, had held that to "countenance short-circuiting of the Tax Court

proceedings here would be, under all the circumstances but more especially in view of Congress' policy and command with respect to those proceedings, a long overreaching of equity's strong arm."  Id. (citing Aircraft & Diesel Equip. Corp. v. Hirsch, 331 U.S. 752, 781 (1947)).

Declining to stay the Renegotiation Board's proceeding pending resolution of the FOIA suit, the Court noted that ordering a stay to provide materials relevant to the ongoing agency litigation would be improper.  "Discovery for litigation purposes is not an expressly indicated purpose of the Act." Bannercraft, 415 U.S. at 20.

Bannercraft provided a much-needed framework for lower court analysis of FOIA issues.  The prior disarray is perhaps best illustrated by one company's receipt of different rulings by different courts regarding jurisdiction over stays of unfair labor practices hearings.  Compare Sears, Roebuck & Co. v. NLRB, 473 F.2d 91 (D.C. Cir. 1972) ("The District Court was correct in its premise that there is jurisdiction to enjoin agency proceedings pending resolution of a Freedom of Information Act claim."), with Sears, Roebuck & Co. v. NLRB, 433 F.2d 210 (6th Cir. 1970)("The district court was correct in concluding that it was without jurisdiction.").  In both cases, the courts declined to order a stay.  But where jurisdiction was found to exist, the stay was denied because the possibility of judicial review

6

indicated that there was no potential for the irreparable harm required for injunctive relief.  Sears, 473 F.2d at 93.

While providing guidance, Bannercraft has not resulted in consistency.  Different courts have continued to take different approaches.  District courts in the Sixth Circuit have continued to hold, for example, that they lack jurisdiction over NLRB unfair labor practices hearings.  See, e.g., 408 F. Supp. 937 (N.D. Ohio 1976); Southwest Motor Freight, Inc. v. NLRB, 411 F. Supp. 1019, 1020 (E.D. Tenn. 1976).  Other courts have held that jurisdiction exists, following the D.C. Circuit.  See, e.g., Goodfriend Western Corp. v. Fuchs, 411 F. Supp. 454, 457 (D. Mass. 1976).

The Fifth Circuit has reflected that, in light of Bannercraft, "most courts addressing the question have held that district courts do have the power to enjoin agency proceedings pending resolution of FOIA claims."  Lewis v. Reagan, 660 F.2d 124, 128 (5th Cir. 1981).  However, the cases listed in Lewis tend to engage in little to no analysis of the proposition, citing Bannercraft for the simple rule that equitable jurisdiction was not ruled out by FOIA and concluding that jurisdiction therefore exists.  Moreover, they do not involve the EPA.  See Columbia Packing Co. v. U. S. Dep't of Agriculture, 563 F.2d 495, 500 (1st Cir. 1977); Encyclopaedia Britannica, Inc. v. FTC, 517 F.2d 1013 (7th Cir. 1975); St. Elizabeth's Hospital v.

NLRB, 407 F. Supp. 1357, 1358 (N.D. Ill. 1976); Lennon v. Richardson, 378 F. Supp. 39, 41 (S.D.N.Y. 1974); United Telephone Company of Pa. v. FCC, 375 F. Supp. 992, 995 (M.D. Pa. 1974). Because Bannercraft stressed that the particular nature of an agency's proceeding was critical to any jurisdictional analysis, this court is forced to conclude that Lewis and the cases it cites are helpful by analogy only, not directly on point.

Lewis addressed Air Force proceedings to review a soldier's Missing in Action status.  After declaring that injunctive relief was generally available to stay agency proceedings pursuant to FOIA, the Fifth Circuit denied the claim based on lack of exhaustion.  Lewis, 660 F.2d at 127 ("Judicial relief is not normally available for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.")(citing Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41 (1938)).

This court notes that, when discussing FOIA jurisdiction, courts frequently discuss jurisdiction in nearly the same breath as they discuss exhaustion of administrative remedies.  Although exhaustion in other contexts is typically a nonjurisdictional matter, it appears to this court that, in the FOIA context, courts often equate a failure to exhaust with a lack of the injury necessary to present a case or controversy to a court.  This conflation is understandable when FOIA is the

8

basis for a request for injunctive relief, which requires a showing of irreparable harm.  Courts have long been accustomed to the frequent overlap of jurisdictional considerations (such as the existence of an injury) with the irreparable harm issue in the injunctive relief context.

In Lewis, the Fifth Circuit explained that there were two main exceptions to the requirement of exhaustion: "when there is no adequate administrative remedy, or when irreparable injury is likely to result absent immediate judicial review."  Id.  Neither of the exceptions applied in that case.  The court found that the Air Force proceedings provided an opportunity to review a status determination upon receipt of new information, and that any factual errors or legal defects could be reviewed by the Court of Claims.  Therefore, it held that the plaintiff had not made an adequate showing of "extraordinary circumstances" or "irreparable injury" justifying the exercise of the district court's jurisdiction to enjoin the agency.  Id.

The interplay of jurisdiction and exhaustion was addressed directly by the Ninth Circuit in a case that, while not involving FOIA, illuminates the issues before this court.  In Amerco v. NLRB, 458 F.3d 883, 887 (9th Cir. 2006), the Ninth Circuit held that a district court lacked equitable jurisdiction over federal agencies when "review in the courts of appeals is both exclusive and comprehensive." (Citing Myers, 303 U.S. 41).

9

Consistent with <u>Bannercraft</u>, the Ninth Circuit deems the question of jurisdiction over agency hearings to be governed by the availability of judicial review, concluding that a district court lacks jurisdiction when a different avenue for review protects the parties' interests.  A district court's jurisdiction to enjoin unfair labor act proceedings before the NLRB

> is inconsistent with the doctrine of administrative exhaustion.  Exhaustion serves two vital purposes: first, to give the agency an initial opportunity to correct its mistakes before courts intervene; and second, to enable the creation of a complete administrative record should judicial review become necessary.

<u>Amerco</u>, 458 F.3d at 887.

<u>Amerco</u> distinguished an unfair labor practices claim under section 10 of the National Labor Relations Act from a union representation claim under section 9, given the different types of review available.  "Whereas Congress explicitly authorized appellate review of every NLRB unfair labor practice decision, Congress provided no similar check on NLRB decisions made pursuant to Section 9."  <u>Amerco</u>, 458 F.3d at 888-89.  Injunctive relief could be ordered by a district court with respect to a section 9 claim at the NLRB, given "the inequity that would result if no court could review claims that the NLRB acted unconstitutionally or contrary to statutory authority in a Section 9 determination."  <u>Id.</u> at 889.  However, because Congress explicitly authorized judicial review by the courts of appeals of

administrative decisions in section 10 disputes, there was no potential for inequity, and therefore no controversy giving rise to jurisdiction in the district courts for section 10 matters. The Ninth Circuit concluded that jurisdiction "did not apply outside the context of Section 9 actions or other situations in which meaningful judicial review is unavailable." Id. at 889-90.

Similarly, the Ninth Circuit held that the All Writs Act, 28 U.S.C. § 1651(a), did not vest the district court with jurisdiction over proceedings by the Federal Energy Regulatory Commission, as the agency's final decisions were reviewable by the courts of appeals. Public Util. Comm'r of Oregon v. Bonneville Power Admin., 767 F.2d 622 (9th Cir. 1985). In so ruling, the Ninth Circuit relied on the "presumption against irrational bifurcation of jurisdiction" described in Forelaws on Board v. Johnson, 709 F.2d 1310, 1311 (9th Cir. 1983), in which the court with original jurisdiction over a final agency action was held to have exclusive jurisdiction over any challenge to the action. Bonneville, 767 F.2d at 627.

These Ninth Circuit decisions echo the point the Supreme Court made in its Aircraft decision, cited in Bannercraft. That is, jurisdiction and exhaustion are intertwined when jurisdiction over agency hearings is at issue:

> Ordinarily of course issues relating to exhaustion of administrative remedies, as a condition precedent to securing judicial relief, and to the existence of jurisdiction

11

> in equity are either separate or separable
> matters, to be treated as entirely or
> substantially distinct. The one generally
> speaking is simply a condition to be performed
> prior to invoking an exercise of jurisdiction
> by the courts. The other goes to the existence
> of judicial power in the basic jurisdictional
> sense. In this case, however, the exhaustion
> problem and that of equity jurisdiction are
> closely, indeed inseparably, related. And both
> are colored by the relevant specific
> provisions of the Renegotiation Acts . . . .

Aircraft, 331 U.S. at 764.

District courts do not have the authority to review administrative action by the EPA; rather, the authority to review EPA decisions is vested in the courts of appeals of the United States.  33 U.S.C. § 1369(b)(1).  This does not mean, however, that district courts lack jurisdiction over the separate issue of ordering remedies in aid of enforcing FOIA.  As the United States District Court for the Northern District of California noted in addressing a request for a stay of an unfair labor practice hearing at the NLRB:

> [T]his is not an action to review decisions of
> the NLRB regarding discovery matters arising
> during the hearing in controversy presently
> pending before the NLRB.  This is a separate
> and distinct action to enforce provisions of
> the FOIA, the benefits of which are available
> to any person.

Capital Cities Communications, Inc. V. NLRB, 409 F. Supp. 971 (N.D. Cal. 1976)(emphasis in original).  No problem arises when different types of challenges, pursuant to different statutes, are brought in different courts.  It is only problematic when

12

"essentially identical agency action" is subject to "initial review in different levels of the federal courts." Forelaws, 709 F.2d at 1313.  Here, this court has original jurisdiction over FOIA claims, 5 U.S.C. § 552(A)(4)(B), and ruling on an injunction pursuant to FOIA would not present a situation in which this court was stepping into an area reserved for the Ninth Circuit.

The Supreme Court in Bannercraft directed courts to look to several factors in determining whether or not equitable jurisdiction under FOIA would arise in any given circumstance: the goals of Congress in enacting FOIA, the possibility of meaningful review, and the nature of the particular agency involved. 415 U.S. at 20.  All of these factors weigh in favor of finding jurisdiction in this court to enjoin an EPA proceeding based on FOIA.

First, with regards to the congressional goals behind FOIA, the Supreme Court has already noted that Congress did not limit the equitable powers of the district courts in authorizing them to grant relief.  In EPA v. Mink, 410 U.S. 73 (1973), the Court, addressing FOIA requests directed to the EPA, said:

> Without question, the Act is broadly conceived. It seeks to permit access to official information long shielded unnecessarily from public view and attempts to create a judicially enforceable public right to secure such information from possibly unwilling official hands.

Id. at 80.  The Court cited a congressional report that stated, "It is the purpose of the present bill . . . to establish a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language . . . ." S. Rep. No. 813, 89th Cong., 1st Sess., 5 (1965).  Although Mink was superseded by statute when Congress clarified which documents were exempted from disclosure under FOIA, its analysis of FOIA's broad purpose remains relevant.

Bannercraft itself addressed the permissible ends of equitable jurisdiction pursuant to FOIA when it warned against the use of FOIA as a tool for discovery.  The City argues here that an exercise of jurisdiction would benefit not just a private party, but the public, by providing access to agency decision-making.  The potential harm the City identifies on the present motion is the exclusion of the public from participation in the promulgation of a new policy, not just the cost to the City of upgrading facilities if the City fails to obtain a stay while pursuing an appeal in the Ninth Circuit of the agency's waiver denial.

The second factor Bannercraft focuses on is the possibility of meaningful review.  As the EPA's final decision is reviewable by the Ninth Circuit, the outcome of the agency proceedings is not irreversible.  However, the issue in this FOIA

action is the separate issue of the public's right to know the basis for the EPA's determination.

Finally, the Supreme Court in Bannercraft emphasized the nature of an agency's proceedings in any ruling on a court's jurisdiction.  The EPA proceedings contrast with those of the Renegotiation Board at issue in Bannercraft.  Whereas the Renegotiation Act authorized informal bargaining over private contracts, the Clean Water Act provides for strict oversight of public entities' water facilities and their environmental impact. The proceedings include periods of public commentary and follow a timetable laid out by the agency.  FOIA is uniquely applicable in this context, as FOIA ensures public access to official decisions and the relevant records.

Given the considerations discussed at length above, this court concludes that it has jurisdiction to issue the injunction the City requests.  In urging this court to recognize that it has jurisdiction over its motion, the City relies most heavily on Title Guarantee Co. v. NLRB, 407 F. Supp. 498 (S.D.N.Y. 1975).  That case simultaneously granted summary judgment with respect to the FOIA requests and enjoined agency proceedings.  The district court acknowledged that this posture distinguished it from other FOIA cases, in which the merits of FOIA document requests remained pending, recognizing that, when a plaintiff prevails on the merits of a FOIA dispute, "the

equitable considerations weigh commensurately more heavily in plaintiff's favor." <u>Id.</u> at 508.  The district court said the exercise of jurisdiction was necessary to enforce the FOIA request, as the NLRB had ignored the court's original order for production of the documents.  <u>Id.</u> ("The N.L.R.B. has chosen, however, not to comply with the disclosure order and seeks to continue its administrative proceeding without giving the plaintiff the benefit of review of material which this court has determined it is entitled to under the Act.").  Although this court agrees with <u>Title Guarantee</u> that it has jurisdiction to enjoin an agency proceeding, it does not, for reasons explained below, order the same kind of relief ordered in that case.

IV.     <u>PRELIMINARY INJUNCTION.</u>

Having concluded that it has jurisdiction over the City's motion for injunctive relief, this court turns to the merits of that motion.  As the facts are undisputed, the court focuses on legal conclusions here.

A.   <u>Standard.</u>

The Supreme Court explains:

A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.

16

<u>Winter v. NRDC, Inc.</u>, 129 S. Ct. 365, 374 (2008).  The Court has
rejected the Ninth Circuit's prior practice of granting
preliminary injunctions based only on a "possibility" of
irreparable harm, when the plaintiff has demonstrated a strong
likelihood of success on the merits.  <u>Id.</u> at 375.  Instead, it
has clarified that the "frequently reiterated standard requires
plaintiffs seeking preliminary relief to demonstrate that
irreparable injury is <u>likely</u> in the absence of an injunction."
<u>Id.</u> (emphasis in original).  Courts are advised that "[a]
preliminary injunction is an extraordinary and drastic remedy,"
<u>Munaf v. Geren</u>, 128 S. Ct. 2207, 2219 (2008).

Ultimately, "the bases for injunctive relief are
irreparable injury and inadequacy of legal remedies." <u>Amoco Prod.
Co. v. Vill. of Gambell</u>, 480 U.S. 531, 542 (1987).  In
determining whether to grant a preliminary injunction, "a court
must balance the competing claims of injury and must consider the
effect on each party of the granting or withholding of the
requested relief." <u>Id.</u>

B.    <u>The City Appears Likely to Win on the Merits.</u>

On the present record, the EPA claims that the
deliberative process privilege, attorney-client privilege, and
attorney work product doctrine shield several of its documents
from discovery.  However, the EPA admits that it has not
thoroughly fleshed out its privilege claims, perhaps because it

17

was focused on defeating jurisdiction.  By contrast, the City has provided detailed responses to the EPA's privilege claims.  The court finds that, on the present record, the City has demonstrated a likelihood of success on these grounds.

First, with regards to the deliberative process privilege, the City notes that the doctrine applies only when a document is "both (1) predecisional or antecedent to the adoption of agency policy, and (2) deliberative, meaning it must actually be related to the process by which polices are formulated." United States v. Fernandez, 231 F.3d 1240, 1246 (9th Cir. 2000) (quoting Nat'l Wildlife Fed'n v. United States Forest Serv., 861 F.2d 1114, 1117 (9th Cir. 1988)) (internal quotation marks omitted).  To satisfy the "predecisional" requirement, a document must be created before the adoption of the agency's decision, because postdecisional documents constitute the "working law" of an agency and are not protected.  Nat'l Labor Relations Bd. v. Sears, Roebuck & Co., 421 U.S. 132, 151-53 (1975) ("the lower courts have uniformly drawn a distinction between predecisional communications, which are privileged, and communications made after the decision and designed to explain it, which are not.").  Many of the documents that the EPA identifies as predecisional are dated after the relevant decision was made.  As the EPA does not dispute this, the City is likely to prevail in its FOIA requests for those documents.

Next, the City notes that the attorney-client privilege
only applies to confidential communications between an attorney
and client when those communications are made in the course of
their professional relationship.  United States v. Martin, 278
F.3d 988, 999 (9th Cir. 2002).  Many of the documents that the
EPA says are protected by the attorney-client privilege have an
"unknown" author and/or recipient.  As the EPA does not address
the issue of the "unknown" persons, these documents on the
present record appear unlikely to be covered by the attorney-
client privilege, or likely to have lost any such privilege when
shared with a third party.

Finally, the City notes that the attorney work product
doctrine covers only the opinions, processes, and notes made by
an attorney in the course of litigation.  See Sowter v. Cowles
Pub. Co., 174 P.3d 60, 75 (Wash. 2007).  "Under Ninth Circuit
law, the test is whether the attorney would have generated the
material 'but for' the prospect of litigation, though it is
immaterial whether or when the litigation actually begins." U.S.
v. Reyes, 239 F.R.D. 591, 598 (N.D. Cal. 2006) (quoting In re
Grand Jury Subpoena (Torf), 357 F.3d 900, 910 (9th Cir. 2004)).
The City argues that the dates of the documents and their authors
cast serious doubt over the applicability of the doctrine.  The
City points out that, in several instances, the dates of the
documents indicate that they could not have been made in

19

preparation for litigation, and the description of authors as
"unknown" makes the applicability of the doctrine questionable.
Given the lack of a detailed response on these points by the EPA,
the City appears likely to prevail on the merits of its claims to
documents based on FOIA.

C.   The City Has Not Demonstrated a Likelihood of
     Irreparable Harm.

Clearly, the City's likelihood of success on the merits
of its FOIA claim does not by itself justify injunctive relief.
The City must also show that it is likely to be irreparably
harmed in the absence of injunctive relief.  The City appears to
be presenting itself not just as a party to an administrative
proceeding but also as either a member or representative of the
public, entitled to the same documents as any private individual
who makes a FOIA request.

While the court agrees with the City that the exclusion
of the public from the EPA proceedings is a harm separate from
matters that can be reviewed by the Ninth Circuit on appeal from
an adverse agency decision, the City does not demonstrate that
the injunction requested will prevent that particular harm.  To
the extent the City is urging this court to enjoin administrative
proceedings because, as a member of the public, it will otherwise
be harmed by being robbed of an opportunity for meaningful
participation, the City does not show how public participation
will be furthered at the administrative appeals stage.  The City

does not, for example, meet its burden of pointing to any period for public commentary during the appeals stage or any likelihood that anyone other than a party to the administrative proceeding will use the requested documents in any brief.  The only potential harm that the court is now asked to remedy appears to be related to the City's role as a litigant in an administrative proceeding and its desire in that capacity for discovery.  But providing discovery is not a sufficient basis for preliminary injunctive relief and is clearly a goal separable from the goal of ensuring public participation.

The City asserts that it will suffer the harm of "its exclusion from the full, legally mandated § 301 permitting process."  But irreparable harm is not evidenced by the disadvantage of having to participate in an administrative review without the benefit of the requested records.  As previously noted, the Supreme Court has explicitly declared discovery to be beyond the intent of Congress in granting equitable jurisdiction pursuant to FOIA.  Bannercraft, 415 U.S. at 20.  In addition, the Ninth Circuit has cautioned that "litigation expenses, however substantial and nonrecoverable, which are normal incidents of participation in the agency process, do not constitute irreparable injury.  Even if the necessary costs will be paid by the public, litigation expense remains immaterial."  California ex rel. Christensen v. FTC, 549 F.2d 1321, 1323 (9th Cir. 1977).

21

The City further alleges the potential for environmental harm following an adverse determination from the EPA, but this argument addresses the substance of the administrative decision.  Any concern about the consequences of a treatment plant upgrade is ultimately a challenge to the final administrative determination, over which the Ninth Circuit has exclusive jurisdiction.  33 U.S.C. § 1369(b)(1).  The same goes for the allegedly nonrecoverable pecuniary harm to the City and the taxpayers if an upgrade were required; this is a harm that would flow from the administrative decision, not an administrative process.  Indeed, there would be no irreparable harm if the City, while challenging an EPA determination at the Ninth Circuit, simultaneously obtained a stay pending the outcome of its appeal.  There is no indication that the City would suffer irreparable harm in the form of being forced to begin any upgrade before exhausting all legal remedies.

The City asks this court to follow <u>Title Guarantee</u> and to enjoin agency proceedings.  That case, however, is the only case identified by the City as one in which a district court relied on FOIA to enjoin an agency proceeding.  While other courts, like this court, have recognized a district court's jurisdiction to issue such injunctions, those other decisions have ultimately held that injunctive relief is unwarranted. <u>Title Guarantee</u> had a unique procedural posture, as it involved a ruling on the merits of the FOIA claim that was contemporaneous

with the grant of injunctive relief.  That case also involved the agency's flouting of an earlier court order.  While this court finds the City likely to prevail on the merits of its FOIA claims, a likelihood clearly is not as strong a basis for relief as an actual victory such as existed in <u>Title Guarantee</u>.  This court is not, of course, saying that an actual victory is a prerequisite to a preliminary injunction.  Rather, this court is noting that, in <u>Title Guarantee</u>, the district court appeared to rule that a lesser showing of harm sufficed in light of the victory on the merits.

V.        <u>CONCLUSION.</u>

      This court has jurisdiction to stay the EPA'S administrative proceedings.  However, despite the City's likelihood of success on the merits, the City has not demonstrated that irreparable harm is likely.  The Motion for Injunctive Relief is accordingly DENIED.

      IT IS SO ORDERED.

      DATED: Honolulu, Hawaii, March 27, 2009.



      /s/ Susan Oki Mollway
      Susan Oki Mollway
      United States District Judge

<u>City and County of Honolulu v. EPA</u>; Civil No. 08-00404 SOM; ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTIVE RELIEF.